[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court by writ returnable on April 29, 1997. By way of claims for relief, both parties seek a dissolution of the marriage. The plaintiff seeks, by way of relief, that the defendant be ordered to maintain health insurance for the plaintiff on the same terms and conditions that it is available to him, and, that each party be declared the sole owner of all assets currently in their respective control or possession. The defendant's claims for relief seek an order for the plaintiff to pay the defendant, as a property division, the sum of $500,000.00; thereafter, that each party may be the sole owner of their respective assets free of any claim from the CT Page 3489 other. The defendant also offers to cooperate in the plaintiff's assertion of her right to continued coverage on defendant's work-related health insurance, with cost to be paid by the plaintiff.
Mr. Dahill has been, throughout the marriage, employed by a family business, the F.J. Dahill Company, Inc. The company was founded in 1883. It has remained continuously in the family since its inception. Just prior to the time of the parties' marriage in April, 1970, Mr. Dahill was paid $250/per week by the company. He also had a 28% stock ownership of F.J. Dahill, which share was worth about $39,200.00.
The real estate on which the company's facilities are located, is owned by a real estate holding company, Dahill Enterprises, Inc. Shortly before the marriage, in the financial affidavit for the dissolution of his first marriage, Mr. Dahill disclosed no ownership of any portion of that business.
At this time Mr. Dahill owns 1/2 of the shares of stock in F.J. Dahill and 1/3 of the shares of stock in Dahill Enterprises. On his financial affidavit he values his interest in the F.J. Dahill stock at $350,000 and in the Dahill Enterprises at $100,000.
In November, 1997, in anticipation of the surgery, Mr. Dahill executed a shareholder agreement with Mr. McAdam (the other shareholder) which made provisions for purchase of shares on the shareholder's death, retirement or disability. The formula for buyout of the shares, on the occurrence of one of these events, is one and one-half times book value. By the terms of the Shareholders' Agreement between the company, McAdam and Dahill, the defendant may first offer his shares to his son James Dahill. If he chooses not to do so, or they are not purchased, McAdam and then the corporation, sequentially have the right to purchase the stock. If the shares are being sold as a result of death or disability, the company must buy the shares (paragraph 4.2 of the agreement). Otherwise, if the stock sale is a result of termination, Dahill may sell the stock to any third party, without restriction. If the company buys the stock it may pay for the stock over a 7 year period with interest rising at prime rate (Shawmut). The entire payment could defer for ten years if the company's Board of Directors determines it necessary as defined in the Agreement.
Mr. Mark Harrison testified as an expert for the plaintiff CT Page 3490 regarding the valuation of the defendant's Dahill shares under the Shareholder Agreement. Mr. Harrison holds the dual credentials of Certified Public Accountant and an attorney. He has testified before this court previously; he is a well-established expert in the area of valuation of business interests. Mr. Harrison valued Mr. Dahill's share at $1,100,000, or one and one-half book value. He conceded that, to date no triggering event had occurred such that Mr. Dahill's shares were being marketed under the Shareholder's Agreement. He conceded that the value of $1.1 million is not the fair market value of the shares. Instead he defined it as the value to Mr. Dahill at this time (or, "the in hand value").
Mr. Dahill valued his stock at $350,000. This was based on a reported value to him over five years ago from the firm accountant. He had no independent basis for assigning a value to the stock.
The court is required to assign values to all of the assets subject to distribution in this matter. The value of Mr. Dahill's shares of stock, or one-half interest, in the closely held corporation of F. J. Dahill Company is before the court. "In assessing the value of . . . property . . . the trier arrives at h[er] own conclusions by weighing the opinions of the appraisers, the claims of the parties, and h[er] own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. (Citations omitted.)" Turgeon v. Turgeon, 190 Conn. 269, 274, 460 A.2d 1260
(1983). The court has been presented with the expert testimony of Mr. Harrison, valuing the Dahill stock based upon the shareholder agreement. None of the triggering events in the shareholder agreement have occurred and therefore the computation based upon present book value cannot be said to apply to some future, indeterminate date. The orders of this court must be based upon the valuation of the assets on the date of the dissolution of the marriage. Connecticut General Statutes section 46b-81 (a);Sunbury v. Sunbury, 216 Conn. 673, 676, 583 A.2d 636 (1990). The court does not accept the valuation of the stock offered by Mr. Harrison. Had a triggering event occurred it might well be an appropriate value to assign to the stock. What the future holds for the health of the Dahill business is not determinable at this time. It is not permissible for the court to base today's valuation on the uncertainties attendant thereto. Further, the court rejects to notion that this is an acceptable method of valuation of the fair market value of Mr Dahill's stock CT Page 3491 interest. It is the court's duty to find the fair market value, not the book value, or the `in hand value' to Mr. Dahill. Ibid,
p. 274, 275. The only other evidence the court received as to the value of the stock is Mr. Dahill's own assertion that it is worth $350,000.00. It is axiomatic that an owner of property is qualified to testify as to the owner's opinion as to its value. Cross-examination, however, revealed that Mr. Dahill's value is based upon an opinion given to him by the company's accountant in 1992. The accountant was not presented for examination. Mr. Dahill had no independent opinion as to value; he had no evidence to offer as to the basis of the valuation of $350,000 listed on his financial affidavit. Further, the reference to the value having been established as of 1992 makes its point of reference so distant in time that it cannot be found relevant to a valuation in 1998. Therefore, any value discerned by this court must be based upon the documents provided as exhibits in this matter. A review of the exhibits results in the conclusion that this court has been provided insufficient information upon which to determine the value of Mr. Dahill's stock. Determination of this value is essential to the decision in this matter.
The court has the authority to appoint an independent expert to value Mr. Dahill's interest in the stock of the corporation. Pursuant to Connecticut Practice Book Section 25-33 (P.B. 1998) the court makes the following orders:
1. The hearing of this matter is reopened for the sole purpose of allowing the expert witness intended to be appointed by this court, to provide evidence regarding the value of Mr. Dahill's stock ownership, such evidence to be subject to examination by the parties.
2. The court intends to appoint Kenneth Pia (or other such appropriate expert if he declines or is other wise unable to serve) subject to his acceptance of the appointment, to independently determine the fair market value of Mr. Dahill's stock ownership in the F. J. Dahill Company at the present time.
3. It is the intention of the court to order the parties to provide such documentation as may be required by the appointed expert so that he may his duties, in a timely manner, upon request. Counsel may be heard on this as well.
4. The court will determine the reasonable compensation to be paid to the expert witness and will direct payment of the same CT Page 3492 from the parties. Said funds will be utilized by the court for the payment of the expert's fees for the performance of these duties and his testimony before the court.
5. The parties are ordered present before this court on April 13, 1998 at 2:00 p. m. for a hearing pursuant to Practice Book section 25-33 regarding the court's intention to appoint an expert and enter orders regarding scheduling and the payment of the expert's reasonable fees.
6. The clerk of the court shall cause a copy of notice to Mr. Pia of these orders as well as to counsel of record.
Munro, J.